IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JON FULLERTON                                                                  PLAINTIFF

v.                              CIVIL NO. 06-5174

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                 DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Jon Fullerton brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before this court were filed on May 15, 2003, alleging an inability to work since April 26, 2003, due to seizures. (Tr.51-52). An administrative hearing was held on December 2, 2003. (Tr. 156-179). Plaintiff was present and represented by counsel.

In a written decision dated May 25, 2004, the ALJ determined plaintiff retained the residual functional capacity (RFC) to perform work at all exertional levels with some environmental limitations. (Tr. 10-17). The Appeals Council declined review of the ALJ's decision on June 15, 2004. (Tr. 2-4).

AO72A
(Rev. 8/82)

Plaintiff appealed this decision in federal district court. In a decision dated August 19, 2005, this court remanded plaintiff's case back to the Commissioner to further develop the record. (Tr. 223-231). The Appeals Council vacated the ALJ's decision and remanded plaintiff's case back to the ALJ on September 12, 2005. (Tr. 234). A supplemental hearing was held on March 7, 2006. (Tr. 269-300). Plaintiff was present and represented by counsel.

By written decision dated April 24, 2006, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 211). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 211). The ALJ determined plaintiff maintained the residual functional capacity (RFC) to perform the exertional requirements of work at all levels of exertion; to crawl, kneel, bend, stoop, balance and crouch since plaintiff testified these activities had never caused seizures; to avoid work at heights or work around moving or hazardous machinery or drive vehicles; to avoid slippery or uneven surfaces; and to miss work one day a month. (Tr. 211). With the help of a vocational expert, the ALJ found plaintiff could perform his past relevant work as a tool clerk. (Tr. 211).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on July 13, 2006. (Tr. 180-182). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties

filed appeal briefs and this case is before the undersigned for report and recommendation. (Doc. #'s 10,13).

**Evidence Presented:**

On his supplemental interview outline, dated May 25, 2003, plaintiff indicated that he could care for his personal hygiene, do the laundry, wash the dishes, change the sheets, iron, vacuum/sweep, take out the trash, perform home and appliance repairs, mow the lawn, rake the leaves, perform garden work, shop for groceries and clothing, go to the bank and Post Office, prepare meals, count change, walk for exercise and errands, use public transportation, watch television, listen to the radio, read, and visit friends and relatives. (Tr. 96-97).

On April 26, 2003, plaintiff was hospitalized in a marked postical state and confused. (Tr. 112). He had reportedly run out of his medication about a week prior to admission, and did not get it refilled. As a result, he experienced a seizure. Three days prior to admission, he was restarted on his medication, by Dr. Johnny Adkins. (Tr. 190). However, on the morning of his admission, he woke up in a ditch, disoriented and confused. (Tr.113). Although his father reportedly transported him to the hospital, records indicate that plaintiff lived alone. (Tr. 112). Further, Dr. Adkins indicated that plaintiff's condition was "usually controlled with Mysoline." (Tr. 112).

A CT scan of his brain revealed a prominent appearing right middle cerebral artery. (Tr. 118). While this could represent volume averaging, the radiologist indicated that he could not rule out the presence of an aneurysm. Therefore, he recommended an MR angiography for further evaluation. Laboratory tests revealed that plaintiff's Primidone level was in the low normal reference range at 5.5, with a normal level being between 5.0 and 12.0. (Tr. 119). As

a physical examination was unremarkable, plaintiff was diagnosed with a seizure postical state. (Tr. 112). By April 27, 2003, his Primidone level had risen to 6.4. (Tr. 120). Accordingly, he was released home with instructions to follow-up with Dr. Adkins in two weeks. (Tr. 111).

Plaintiff returned to Dr. Adkins office on May 12, 2003, for a follow-up from his hospital stay. (Tr. 188). Treatments notes indicate plaintiff had not experienced a seizure.

On May 23, 2003, Dr. Adkins completed a treating physician's report for seizure disorder. (Tr. 125). He described plaintiff's seizures as grand mal, occurring one to three times over the past year. Dr. Adkins also indicated that plaintiff suffered from an alteration of awareness and convulsions during seizures. Plaintiff's most recent seizure was noted to have occurred in April 26, 2003, however, it was not observed by Dr. Adkins. He then stated that plaintiff's medication had last been adjusted on May 21, 2003.

On January 20, 2004, plaintiff underwent a consultative neurological exam with Dr. David Oberlander. (Tr. 136-138). His chief complaint was seizures, reporting a longstanding history and poor compliance with his seizure medications. Plaintiff reported suffering "upwards of one staring spell per week but has more rare whole body jerking twice per month." He also reported an increase in proclivity towards seizures when he was under stress of deprived of sleep. Although he claimed to not be able to afford his medication "sometimes," he told Dr. Oberlander that he continued to smoke one package of cigarettes per day. (Tr. 136). Following a physical examination, Dr. Oberlander concluded that plaintiff's symptoms and findings were consistent with a history of a seizure disorder, which appeared "to be of the secondarily generalized variant." (Tr. 137). He noted that plaintiff's compliance was occasionally poor, as was evidenced by his medical records. Further, Dr. Oberlander stated that an EEG performed that

4

day showed occasional bitemporal sharp discharges at rest, indicating drowsiness that placed him at risk for focal and secondarily generalized seizures. (Tr. 138-139).

This same date, Dr. Oberlander completed a medical assessment of plaintiff's ability to perform work-related activities. (Tr. 140-142). He indicated that plaintiff's impairment did not affect his ability to lift, carry, stand, walk, sit, reach, handle, feel, push, pull, see, hear, or speak. (Tr. 140-141). However, due to plaintiff's seizures, Dr. Oberlander reported that plaintiff could never balance, and should only occasionally climb, stoop, crouch, kneel, and crawl. (Tr. 141). Further, he indicated that seizure precautions should be followed, to include avoidance of slippery, uneven surfaces and heights. (Tr. 141).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including

evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff argues that the ALJ failed to properly analyze the ALJ's subjective complaints. "[Fullerton's] subjective complaints may be discounted if there are inconsistencies in the record as a whole." Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). We will defer to an ALJ's credibility finding as long as the "ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) (quoting Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)). After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

We first address plaintiff's alleged disabling seizure disorder. The evidence reflects plaintiff started having seizures during his teenage years and had been prescribed medication. During the relevant time period, plaintiff was hospitalized in April of 2003 after experiencing

a seizure. Treatment notes indicate plaintiff had been out of medication for a week but had started taking it again three days prior to the seizure episode. Dr. Adkins noted plaintiff's seizure condition was "usually controlled" with medication. *See Johnston v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (holding that impairments controllable or amendable to treatment do not support a finding of total disability); *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). While in the hospital plaintiff underwent a CT scan that revealed a prominent appearing right middle cerebral artery and the presence of an aneurysm could not be ruled out. Plaintiff was discharged and instructed to follow-up with Dr. Adkins in two weeks. With the exception of the consultative examination in January of 2004, there is little evidence to show that plaintiff complained of breakthrough seizures while taking the medication as prescribed or attempted to seek treatment regarding his seizures. Based on the record as a whole, we find substantial evidence to support the ALJ's determination that plaintiff did not have a disabling seizure disorder.

Plaintiff testified that he was unable to seek treatment after every seizure due to the lack of finances. We would point out that despite reporting an inability to pay for medical care plaintiff was able to continue to purchase and smoke one package of cigarettes per day. (Tr. 136). There is also no indication that plaintiff sought treatment for seizure activity but was denied treatment due to the inability to pay or that plaintiff attempted treatment at a free or low cost clinic.

With regard to plaintiff's alleged disabling mental impairment, the ALJ found plaintiff did not suffer from a severe mental impairment noting that plaintiff has not sought treatment for

8

a mental health impairment during the relevant time period. *See Jones v. Callahan*, 122 F.3d 1148, 1153 (8th Cir. 1997) (ALJ properly concluded claimant did not have a severe mental impairment, where claimant was not undergoing regular mental-health treatment or regularly taking psychiatric medications, and where his daily activities were not restricted from emotional causes). We find substantial evidence of record to support the ALJ's finding that plaintiff did not suffer from a severe mental impairment for the time period in question.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. At the supplemental hearing, plaintiff testified that he was able to work twenty-four hours a week cleaning up constructions sites. Further in a supplemental interview outline, dated May 25, 2003, plaintiff indicated that he could care for his personal hygiene, do the laundry, wash the dishes, change the sheets, iron, vacuum/sweep, take out the trash, perform home and appliance repairs, mow the lawn, rake the leaves, perform garden work, shop for groceries and clothing, go to the bank and Post Office, prepare meals, count change, walk for exercise and errands, use public transportation, watch television, listen to the radio, read, and visit friends and relatives. This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disability. See *Cruze v. Chater,* 85 F.3d 1320, 1324 (8th Cir.1996) (mowed lawn, shopped, odds jobs and visits town); *See Polaski* at 1322.

Plaintiff argues that the ALJ failed to address plaintiff's father's testimony. A review of the ALJ's decision clearly shows that ALJ addressed the testimony of plaintiff's father. (Tr. 210). As the testimony of family members and friends need only be given consideration and

need not be considered credible, the ALJ properly discredited the testimony of the witness. *Lawrence v. Chater*, 107 F.3d 674, 677 (8th Cir. 1997).

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform work at all exertional levels with occasional postural activities and environmental limitations related to his seizure disorder, the ALJ considered plaintiff's subjective complaints and the medical records of his treating and examining physicians. In making this RFC determination, the ALJ directly addressed Dr. Oberlander's assessment indicating that plaintiff had no limitations in his ability to carry, lift, stand, walk, sit,

10

reach, handle, feel, push, pull, see, hear, or speak; that due to his seizure disorder plaintiff could never balance, and should only occasionally climb, stoop, crouch, kneel, and crawl; and that plaintiff should avoid slippery, uneven surfaces and heights. The ALJ found, with the exception of the postural limitations, that the record as a whole supported Dr. Oberlander's opinion. We note, the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole. *Bentley v. Shalala,* 52 F.3d 784, 787 (8th Cir. 1995)*; Prosch v. Apfel,* 201 F.3d 1010, 1012 (8th Cir. 2000). In this case, the ALJ properly explained why he chose to disregard this examiner's findings and we find substantial evidence to support the ALJ's decision.

Plaintiff argues that the ALJ did not follow the court Order on remand. We disagree. The ALJ was directed to properly consider the findings in Dr. Oberlander's assessment and to contact Dr. Oberlander for clarification purposes if needed. On remand, the ALJ addressed Dr. Oberlander's assessment and indicated the weight he gave this assessment and the reasoning to support his findings.

We also believe substantial evidence supports the ALJ's conclusion that plaintiff can return to his past relevant work as a tool clerk. According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if he retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
> 2. The functional demands and job duties of the occupation *as generally required by employers throughout the national economy*.

AO72A
(Rev. 8/82)

20 C.F.R. § 416.920(e); S.S.R. 82-61 (1982); *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

Therefore, even though a claimant cannot perform the actual demands of his particular past job, if he can carry out his job as it is generally performed in the national economy, he is not disabled under the regulations. *Evans v. Shalala*, 21 F.3d 832, 834 (8th Cir. 1994). To determine what a typical job description is in the national economy, an ALJ may take notice of job information in the Dictionary of Occupational Titles (D.O.T.). *Id.* The D.O.T. classifies a tool clerk as medium, skilled work. *See* DICOT § 222-367.062 *at* www.westlaw.com. A vocational expert also testified at the hearing that with the RFC found by the ALJ plaintiff could perform his past relevant work as a tool clerk. Accordingly, the ALJ properly concluded that plaintiff could perform his past relevant work as a tool clerk.

Finally, we reject plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly even when a claimant has an attorney, *See Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order consultative examination when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision. *See Strongson v. Barnhart,* 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

**Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and**

**recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of September 2007.

/s/  *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

13

**AO72A**
**(Rev. 8/82)**